F. SCHULENBURG ET AL., Respondents, *v.* F. S. HAWLEY
ET AL., Appellants.

### May 14, 1878.

1. A mechanic's lien can be enforced by the material-man for only such materials as were actually used in the construction.
2. Declarations of the contractor, made at the time of the purchase, as to the purpose for which the materials were to be used is not evidence that the materials were used in the construction of the building; as against the owner such declarations of the contractor are mere hearsay.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

G. M. STEWART, for appellants : The material-man must show that the materials were actually used in the construction. — *Simmons* v. *Carrier*, 60 Mo. 581; *Fitzpatrick* v. *Thomas*, 61 Mo. 515; *Chapin* v. *Paper - Works*, 30 Conn. 461.

RUDOLPH SCHULENBURG, for respondents : Evidence by the plaintiffs that the materials were furnished to be used in the construction of the building makes a *primá facie* case, and the statements of the contractor at the time of making the purchase are admissible for that purpose. — *Morrison* v. *Hancock*, 40 Mo. 561; *Simmons* v. *Carrier*, 60 Mo. 581.

LEWIS, P. J., delivered the opinion of the court.

Plaintiffs sue to enforce a mechanic's lien upon premises belonging to defendant Hawley, for lumber furnished to defendant Cutter, who was the building-contractor. The proceeding was commenced before a justice of the peace, who gave judgment for the defendants. On plaintiffs' appeal to the Circuit Court, a verdict and judgment were rendered in their favor.

The account of items furnished amounted to $1,620.20. On this was a credit for $1,402 paid, which left a balance due of $218.20. The plaintiffs' testimony tended to prove that all the articles charged were furnished to defendant

Cutter at the prices specified, which were reasonable and proper; that all were ordered by Cutter or his authorized foreman, for the purpose of being used as materials in the building of Hawley's house; that Cutter was at the same time building a number of other houses, for different persons; that about one-half the lumber was delivered by plaintiffs' teamsters at the Hawley building, and the other half was taken in Cutter's wagons to his workshop. As to the last-mentioned half, the only testimony introduced by plaintiffs to connect it with the Hawley building consisted of the declarations made by Cutter, or his foreman when the lumber was obtained, to the effect that it was purchased for exclusive use in that erection. At the close of plaintiffs' testimony defendants asked the court to instruct the jury, in effect, that the plaintiffs had failed to prove that all the lumber charged for had been used on Hawley's house, and that their lien could not be established as demanded. This the court refused.

For the defence, both Cutter and his foreman testified that of all the lumber charged for in the account, that which actually went into the Hawley house amounted to only $1,091.27; that of the residue some was put into other buildings, and a considerable quantity yet remained in Cutter's shop; that the plaintiffs had already been paid more, by the sum of $308.17, than the prices charged for all the lumber that was actually used in the Hawley building.

The court, by its instructions, informed the jury that in order to a finding for the plaintiffs they must believe from the evidence that the lumber charged for was used in the building of Hawley's house, and that the same, so used, or part thereof, remained unpaid for. An instruction to the effect that if Cutter, in ordering the lumber, stated that it was to be used in the Hawley house, and if plaintiffs delivered the lumber in conformity with such orders and statements, then the jury might infer therefrom the use of the lumber in accordance with such statements, was refused.

From this it appears that the court properly entertained the theory that a lien could be enforced for only such materials as were actually used in the construction. As $1,402 had been paid on the account, it was obviously necessary to the plaintiffs' case that materials to an amount exceeding that sum had been so used. But was there sufficient testimony, or any testimony whatever, upon which the jury might be authorized to come to that conclusion? If not, the court erred in instructing upon a hypothesis of fact which was without evidence to support it.

Plaintiffs rely upon the expressed purposes of the contractor when purchasing the lumber, as sufficient for a *primâ facie* case. We are referred to expressions of our Supreme Court in *Simmons* v. *Carrier*, 60 Mo. 581, commenting on *Morrison* v. *Hancock*, 40 Mo. 561, as sustaining this view. But it is clear that no authoritative ruling to such effect can be gathered from that source. Hough, J., delivering the opinion, says : "The statement of facts in that case [*Morrison* v. *Hancock*] is meagre, and the language of the opinion slightly obscure, and it may be doubted whether it was intended to decide more than that evidence by the plaintiff that the materials were furnished for the purpose of being used in the construction of the building would make a *primâ facie* case, and that the statements of the contractor at the time of making the purchase were admissible for that purpose." Herein is neither approval nor disapproval. The decision commented on is, however, so diametrically opposite to that which the learned judge is announcing, that we can find in the expressions used nothing beyond a most forbearing method of treatment applied to the process of overruling the earlier opinion.

The decision in *Morrison* v. *Hancock* does not content itself with holding that evidence of the furnishing of the materials for the purpose of being used in the construction would make a *primâ facie* case. The emphatic doctrine is that it would make a conclusive case for the plaintiff. It

proceeds upon the theory that the contractor is an agent for the owner, clothed with authority to bind him " so far as the procuring of materials and labor may be necessary to complete the contract." The trial court is held to have erred in instructing the jury " that they were to ascertain whether this particular lumber was actually used in the building of the hotel or not." Said the court: "All that the plaintiff is required to show is the fact that the materials were furnished for the purpose of being used in constructing the building." This fact is thus made the material ground of recovery. It performs no office as evidence of the actual use of the materials in the construction, for such actual use is pronounced to be, in effect, immaterial and irrelevant. In *Simmons* v. *Carrier*, on the other hand, the exact contrary is declared to be the law. An instruction given for the plaintiff was distinctly framed upon the doctrine of *Morrison* v. *Hancock*, declaring that it was not necessary for the plaintiffs to prove that the lumber furnished was actually used in the construction of the building, but that it was sufficient, in the absence of collusion or fraud, that the lumber was furnished for the purpose of being used in the building. This instruction is held to be " diametrically opposed " to one given for the defendants, to the effect that the actual use of the materials in the building was essential to the plaintiffs' recovery. The last is declared to have been proper, and the first erroneous. The court, in emphatic terms, holds that " the sections giving a lien to the material-man must be construed to give it only when the materials actually enter into the construction of the building sought to be charged." This, then, is the latest and authoritative ruling of our Supreme Court controlling the determination of the case before us. With this in view, we are unable to perceive by what process it can be shown that the declared purpose of the contractor in making his purchases will be even *primâ facie* evidence of the actual use of the materials in the building to be

·charged. It cannot be on the ground of admissions by the contractor as agent, binding the owner, his principal; for the whole doctrine of such agency in procuring the materials, as announced in *Morrison* v. *Hancock*, is effectually swept away in *Simmons* v. *Carrier*. The agency, if any, begins with the act of putting the materials into the building. Up to that point, the acts of the contractor bind the owner to nothing. To say that the statements of the contractor may prove the fact which initiates his agency is equivalent to saying that the fact of agency may be established against the principal by the admissions of the agent. Clearly, so far as the lien law is concerned, no such relation exists between the building-contractor and the owner, prior to the putting of materials or labor into the construction, as will make the acts or admissions of the one binding upon the other. There is nothing in their subsisting relations which, as against the owner, can make the contractor's statements either more or less than hearsay.

We conclude that proof of the purchase of the lumber by the contractor for the purpose of using it in Hawley's building was not competent testimony, *primâ facie* or otherwise, to establish the essential fact that it was afterwards so used. It follows that as to about one-half the lumber charged in the account there was no evidence whatever that it went into the building sought to be charged with the lien. As largely more than half the account was paid before the commencement of the suit, it follows, further, that there was nothing tending to show an unpaid balance for which a lien could be enforced. The court therefore erred in refusing the instruction prayed for by defendants at the close of the plaintiffs' testimony. The court erred also in instructing the jury upon a hypothesis which had no foundation anywhere in the testimony.

The judgment is reversed and the cause remanded. All the judges concur.